**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

MALIBU MEDIA, LLC *

*

Plaintiff, *

v. * Civil No.: 1:12-cv-01118

JOHN DOES 1-11 *

Defendants. *

* * * * * * * * * * * *

**MOTION TO DISMISS OR SEVER FOR MISJOINDER**
**OR IN THE ALTERNATIVE MOTION TO QUASH THE SUBPOENA**
**OR IN THE ALTERNATIVE MOTION FOR A PROTECTIVE ORDER**
**JOHN DOE #7 (IP address: 98.117.44.144)**

John Doe #7 (IP address 98.218.254.179) ("Defendant"), by and through counsel Christina N. Boffen and The Law Office of Christina N. Boffen, LLC and Stuart L. Plotnick and The Law Offices of Stuart L. Plotnick, hereby moves to dismiss or sever for misjoinder. Alternatively, Defendant moves to quash the subpoena directed to Comcast in the instant case. Defendant states the following in support thereof:

## I. BACKGROUND

Malibu Media, LLC ("Plaintiff"), filed its Complaint on July 9, 2012 alleging that eleven John Does, including John Doe #7 (IP address 98.218.254.179) ("Defendant") violated its copyright to the pornographic video production titled "Pretty Back Door Baby" ("the Work").

The Court granted Plaintiff's request to take discovery on July 9, 2012. To uncover Defendants' identifying information, Plaintiff issued subpoenas to Defendants'

Internet Service Providers (ISPs), including Defendant's ISP, Comcast. Plaintiff utilizes an Internet Protocol (IP) address to identify each of the alleged infringers. Defendant was identified by IP address 98.218.254.179. Before revealing Defendant's identifying details, including name and address, Comcast alerted Defendant with notice of the Plaintiff's subpoena.

Plaintiff's Complaint is ostensibly about the protection of Plaintiff's copyright to a certain film, however this litigation is just one of countless actions brought by this Plaintiff and other similar Plaintiffs claiming copyright protection for pornographic films. To your Defendant's knowledge and belief, very few of these similar actions have ever been brought to trial.

The fact that few similar cases have been brought to trial is significant. It evidences the real purpose of these suits: not to enforce copyrights, but to bully Defendants, such as John Doe #7 (IP address 98.218.254.179), into financial settlements to avoid being publicly associated with a pornographic video company and avoid being publicly accused of illegally downloading pornography.

## II.     MOTION TO SEVER

### A. DEFENDANT SHOULD BE DISMISSED DUE TO MISJOINDER

Defendant should be severed or dismissed, in accordance to *Fed. R. Civ. P.* 21 for improper joinder. The Federal rules permit joinder only if:

1. any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

2. any question of law or fact common to all Defendants will arise in the action.

*Fed. R. Civ. P.* 20(a)(2).

Joinder is not necessary, even if these requirements are satisfied. The Court may choose to instead order separate trials to protect a party against "embarrassment, delay, expense, or other prejudice." *Fed. R. Civ. P.* 20(b). Severance may occur on the court's motion or a party's motion. *Id.*

The facts of this case do not support joinder based on Federal Rule 20(a). "The claims against the different defendants will require separate trials as they may involve separate witnesses, different evidence, and different legal theories and defenses, which could lead to confusion of the jury… [T]here will almost certainly [be] separate issues of fact with respect to each Defendant." *Cinetel, Inc. et al v. Does 1-1,1052,* No. 11-cv-2438-JFM (D.Md. 2012) at *9 (quoting *BMG Music v. Does 1-203*, No. Civ. A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. 2004). This is sure to be the situation in the instant case, which attempts to join eleven defendants. The court in *Cinetel* went on to sever all but one Doe Defendant.

The swarm joinder theory (alleging that the Doe Defendants were coordinated in their actions) "has been considered by various district courts, the majority of which have rejected it." *Raw Films v. Does 1-32*, No. 1:11-CV-2939-TWT, 2011 WL 6840590, at *2(N.D. Ga. 2011). "Downloading a work as a part of a swarm does not constitute 'acting in concert' with another, particularly when the transaction happens over a long period." *Raw Films* at *2. "Passively allowing another individual to upload a piece of a file is a far cry from the 'direct facilitation' plaintiffs would have this court find." *Cinetel, Inc.* (D.Md. 2012) at *12.

This court stated in *Cinetel* that even if the Plaintiff were able to satisfy Rule 20(a)(2) for joinder, the court would "still sever the Doe defendants based on [the court's] discretionary authority under Rule 20(b) because allowing joinder here is inefficient, raises significant manageability problems, and is unduly prejudicial to the defendants….This court, conversely, finds that severance best promotes judicial economy." *Cinetel, Inc.* (D.Md. 2012) at *13. "Joinder in these types of cases 'fails to promote trial convenience and expedition of the ultimate determination of the substantive issues' because even though the hundreds of defendants may have engaged in similar behavior, they are likely to present different defenses." *Digital Sin, Inc. v. Does 1-5698,* 2011 WL 5362068 at *4. "The enormous burden of a trial like this "completely defeat[s] any supposed benefit from the joinder of the Does….and would substantially prejudice defendants and the administration of justice." *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011)).

On April 30, 2012, another order in another similar file-sharing copyright infringement case joining 4,165 defendants, found joinder improper and severed and dismissed all Defendants except John Doe #1. *Nu Image, Inc. v. John Does 1- 4,165,* 8:11-cv-2736 (D. Md. April 30, 2012). The court in the *Nu Image, Inc.* case cited its entire reasoning from a recent order in another similar file sharing case with numerous Defendants, *Third Degree Films v. Does 1-108,* 8:11-cv-3007 (D. Md. April 27, 2012). In the *Third Degree Films* case, the court likewise found joinder improper and severed and dismissed all Defendants except John Doe #1. And previously on April 19, 2012 in yet another similar case, the court found joinder of 85 John Does improper, and severed

and dismissed all defendants except John Doe #1. *Third Degree Films, Inc. v. Does 1-85*, 8:12-cv-23 (D. Md. April 19, 2012).

The Plaintiff in this case has similarly failed to meet Rule 20's two prong test for permissive joinder. Plaintiff has not adequately demonstrated that Defendants were engaged in the same transaction involving the same question of law or fact common to all Defendants. Therefore, Plaintiff's joinder of the Doe defendants is improper. Defendant John Doe #7 (IP address 98.218.254.179) should be accordingly severed and dismissed.

**B. DEFENDANT SHOULD BE SEVERED DUE TO FAILURE TO PAY PROPER FILING FEES**

By pursuing a mass action, Plaintiff has improperly avoided payment of filing fees. This legal argument is adopted from the Magistrate Ruling, In Re Bit Torrent Adult Film Copyright Infringement Cases, Order and Recommendation, Case 2:11-cv-03995-DRH-GRB, Docket # 39 in the United States District Court for the Eastern District of New York.

The payment of court filing fees is mandated by statute. Specifically, the "district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350." 28 U.S.C. § 1914(a). Of that amount, "$190 shall be deposited into a special fund of the Treasury to be available to offset funds appropriated for the operation and maintenance of the courts of the United States." 28 U.S.C. §1931(1).

In multidistrict cases considering severance of cases, courts have noted that the filing fee has:

> two salutory purposes. First, it is a revenue raising measure. . . Second, §1914(a) acts as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits. Had each plaintiff initially instituted a

> separate lawsuit as should have occurred here, a fee would have been collected for each one. . . . Thus, the federal courts are being wrongfully deprived of their due. By misjoining claims, a lawyer or party need not balance the payment of the filing fee against the merits of the claim or claims.

*In re Diet Drugs*, 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004); see also *In re Seroquel Prods. Liability Litig*., 2007 W L 737589, at * 2-3 (M. D. Fla. Mar. 7, 2007) (denying reduction of filing fees, noting the burden on the court and the "gate keeping feature of a filing fee").

Several courts in similar cases involving BitTorrent protocol have also recognized the effect of a countenancing a single filing fee. One court described the "common arc of the plaintiffs' litigating tactics" in these cases:

> ...these mass copyright infringement cases have emerged as a strong tool for leveraging settlements–a tool whose efficacy is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*Pacific Century*, 2012 W L 1072312, at * 3. Thus, the plaintiffs file a single case, and pay one filing fee, to limit their expenses as against the amount of settlements they are able to negotiate. Postponing a determination on joinder in these cases "results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible." *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683, at *5 (S.D. Tex. 2012).

In this case before this Court, plaintiff has improperly avoided paying filing fees for eleven defendants by employing its swarm joinder theory. This is by itself a significant sum of money. If the reported estimates that hundreds of thousands of such defendants have been sued nationwide are at all accurate, plaintiffs in similar actions may

be evading millions of dollars in filing fees. Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. They should not be permitted to profit without paying statutorily required fees.

## III. MOTION TO QUASH THE SUBPOENA

### A. DEFENDANT HAS STANDING TO CHALLENGE SUBPOENA

A party has standing to challenge a subpoena issued to a non-party if the party claims "some personal right of privilege in the information sought in the subpoena. *Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221, at *1 (D. Md. Feb. 24, 2010).

In this case, Defendant has a right to privacy in the personal information sought by Plaintiff, including Defendant's name and address. No matter how "minimal or 'exceedingly small' the Doe Defendants' interests are, parties need only have 'some personal right or privilege in the information sought' to have standing to challenge the subpoena to a third party." *Robertson*, 2010 WL 716221, at *1. Accordingly, Doe Defendants have standing to contest the subpoenas, and their motions to quash should not be denied on that basis. *Third Degree Films, Inc. v. Does 1-108*, 8:11-cv-3007-DKC (D. Md. 2012).

### B. THE SUBPOENA MUST BE QUASHED

Federal Rule of Civil Procedure 45(c)(3)(a) states that a court must quash a subpoena that subjects a person to an "undue burden." A court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense" upon a showing of good cause. Fed. R. Civ. P. 26(c). The court determines what constitutes an "undue burden" by considering

"relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Flatow v. Islamic Republic of Iran,* 196 F.R.D. 203, 206 (D.D.C. 2000).

The subpoena in the instant case will most certainly subject Defendant to an undue burden. Plaintiff only presents evidence linking the alleged download to Defendant's IP address. Plaintiff does not present evidence indicating that Defendant was the individual who executed the alleged illegal download of the Work. Any individual permissibly or impermissibly using Defendant's wireless Internet service could have executed the alleged download.

At least one court has denied a similar Plaintiff's requests for pre-service discovery, finding that "Plaintiff's sought-after discovery, as designed, has potential to draw numerous innocent internet users into the litigation, placing a burden upon them that outweighs Plaintiff's need for discovery." *Pac. Century Int'l, Ltd. v. Does 1-101,* CV-11-2533 (DMR), 2011 WL 5117424 at *2 (N.D. Cal. Oct. 27, 2011). In another similar case, the court stated that that the lack of a perfect correlation between IP addresses and Doe defendants, combined with the stigma associated with accusations of even viewing pornography, "gives rise to the potential for coercing unjust settlements from innocent defendants." *Digital Sin, Inc. v. Does 1-176,* CV-12-00126, 2012 WL 263491, at *1 (S.D.N.Y. Jan 30, 2012). This court stated in *Third Degree Films* 8:11-cv-3007 (D. Md. April 27, 2012) that "the risk of extortionate settlements is too great to ignore, especially when joinder is being used to that end."

Due to the pornographic nature of the download in question, the release of Defendant's personal information risks a substantial and almost certainly permanent injury to Defendant's reputation, and risks subjecting Defendant to the time, expense, emotional distress and humiliation of defending against a baseless and embarrassing lawsuit. If Defendant is publicly accused of illegally downloading pornography, Defendant may be permanently affected and stigmatized. Defendant's business relationships, career, family ties, and social ties may be irreparably impacted by the mere public allegation of such an offense. "The risk of inappropriate settlement leverage is enhanced in a case involving salacious and graphic sexual content where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content defendant was accessing." *Cinetel* at *4.

Plaintiff should acknowledge the fact that:

> "IP subscribers are not necessarily copyright infringers.... [while] an IP address might actually identify an individual subscriber and address the correlation is still far from perfect... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."

*VPR Internationale v. Does 1-1017,* 2011 U.S. Dist. LEXIS 64656 (C.D. Ill. Apr. 29, 2011). It is absolutely impossible for Comcast or Plaintiff or anyone else to determine from an IP address (a) what type of device was connected to the Internet connection of Defendant on the date in issue (b) who was using the device on that date, (c) who was aware of the use of that device on that date, or (d) the physical location of any device that was linked to that IP address on that date.

Most of the ISP subscribers in these cases are not infringing Plaintiff's copyrighted works. Therefore, Plaintiff should not be permitted to unduly burden or

harass alleged infringers. This case is, as the the *VPR Internationale* court stated, "a fishing expedition by means of a perversion of the purpose and intent of class actions." Accordingly, the subpoena referencing Defendant should be quashed.

## IV. MOTION FOR A PROTECTIVE ORDER

Defendant respectfully requests that the Court enter a protective order pursuant to Federal Rule of Civil Procedure 26(c): "Upon motion by a party….accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending….may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense."

Thus, Defendant requests that this Court issue a protective order requiring Plaintiff to not publicly disclose the identity or address of this defendant and requiring Plaintiff to file under seal any documents containing Doe #7's identifying information. A "[protective order is warranted because] ISP subscribers may be innocent third parties, the subject matter of the suit deals with sensitive and personal matters, and the jurisdictional and procedural complications might otherwise dissuade innocent parties from contesting all allegations." *Digital Sin, Inc. v. Does 1-5698*, 2011 WL 5362068 (N.D.Ca. Nov. 4, 2011). All of these concerns are present in the instant matter.

The privacy interest of innocent third parties weighs heavily against the public's interest in access to court documents. *Id.* at *4 (citing *Gardner v. Newsday, Inc.,* 895 F.2d 74, 79-80 (2d Cir. 1990). Also, requests for pseudonymity have been granted when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal

nature. *Id.* (citing *Does I thru XXII v. Advanced Textile Corp.,* 214 F. 2d 1058, 1068 (9th Cir. 2000). An allegation that an individual illegally downloaded adult entertainment likely goes to matters of a sensitive and highly personal nature, including one's sexuality. *Id.*

Therefore, Defendant requests that the Court issue a protective order pursuant to Rule 26 (c), requiring Plaintiff to not publicly disclose the identity or address of this defendant and file under seal any documents in this case containing Defendant's name and address.

**CERTIFICATE OF COMPLIANCE WITH F.R.C.P. 26(c)**

The undersigned hereby certifies that movant has in good faith attempted to confer with Plaintiff as required by F.R.C.P. 26(c), but Plaintiff's counsel was not available, so a message was left on his voicemail.

## V. CONCLUSION

Having stated the foregoing, Defendant John Doe #7 (IP address 98.218.254.179) should be dismissed or severed from the above-captioned case based on misjoinder. Alternatively, the subpoena should be quashed or the court should grant Defendant a protective order.

Respectfully submitted,

Christina Boffen

Christina N. Boffen, Esq. (Bar No. 29851)
Counsel for John Doe #7 (IP: 98.218.254.179)
The Law Office of Christina N. Boffen
216 N. Crain Hwy, Suite 202A
Glen Burnie, MD 21061
cboffen@gmail.com
Phone: (410) 718-2929
Fax: (410) 747-3741

Stuart L. Plotnick

Stuart L. Plotnick
The Law Offices of Stuart L. Plotnick
51 Monroe Street
Suite 701
Rockville, MD 20850
info@plotnicklaw.com
Phone: (301) 251-1286
Fax: (301) 762-8539

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of August, 2012, a copy of the foregoing was served electronically via CM/ECF.

Christina Boffen

Christina N. Boffen